IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

SHAYNEN JONES,

        Plaintiff,

v.                                                       CIVIL ACTION NO. 3:20-0786

MARSHALL UNIVERSITY BOARD OF GOVERNORS
d/b/a MARSHALL UNIVERSITY;
STEPHANIE BALLOU, an individual; and
MAURICE COOLEY, an individual,

        Defendants.

## ORDER

Pending before the Court are Defendants Stephanie Ballou and Maurice Cooley's Motion to Dismiss, ECF No. 16, and Defendant Marshall University Board of Governors's Motion to Dismiss, ECF No. 18. For the reasoning provided herein, the Court **DENIES** Defendants Ballou and Cooley's Motion, and it **DENIES, in part,** Defendant Marshall University Board of Governors's Motion.

### I.    BACKGROUND

Plaintiff Shaynen Jones alleges the following facts. Plaintiff enrolled at Marshall University as a pre-Nursing undergraduate student in 2019 after obtaining 30 transferrable hours from Mountwest Community and Technical College. *Am. Compl.* ¶ 9–10. She has "above-average cognitive, emotional and mental acuity compared to able bodied adults of her age," and she "is qualified to be a student at Marshall University and [is] able to perform all of the essential functions of being a student with reasonable accommodations." *Id.* at ¶¶ 3–4.

In preparation for beginning her studies at Marshall University the following fall, "in approximately March 2019, Plaintiff contacted Marshall University's Office of Disability Services" and specifically "advised Marshall University's Director of Disability Services, Stephanie Ballou, that Plaintiff is deaf and will need the services of an interpreter and notetaker." *Id.* at ¶ 12. Thereafter, Plaintiff's physician provided the Office of the Director of Disability Services with documentation of Plaintiff's hearing disability on three separate occasions before the fall semester began. *Id.* at ¶ 13. Despite this, Plaintiff was not provided an interpreter for her first day of class, and "[a]fter that date, interpreter services were not consistently provided to Plaintiff while she attended classes; rather, interpreter services were provided only intermittently and, on at least one occasion, cancelled." *Id.* at ¶ 14. Plaintiff repeatedly advised Defendant Ballou about the lack of reliable and consistent services. *Id.* at ¶ 15.

In addition to requesting interpreter services during class, on August 28, 2019, "Plaintiff requested access to an interpreter to assist her in utilizing the university's writing center, tutoring center, and bookstore; to assist her in meeting with her mentor in the EDGE program; and, to assist her at meetings with professors during office hours," but those requests were denied. *Id.* at ¶¶ 16–17.

Plaintiff was later informed that she needed to provide one week's notice "if she required an interpreter for any academic reason other than attending classes," however, on September 13, 2019, even after she provided eleven days' notice that she needed an interpreter for an academically required appointment with a Career Education Specialist, she was advised that she had not provided sufficient notice. *Id.* at ¶ 17. The same day, Defendant Ballou provided Plaintiff with a "procedure document," titled "Administrative Procedure Student – 06 Procedure for Interpreting Services for Deaf, Hard-of-Hearing and Hearing Support," which stated that students

were required to "[r]equest the reasonable accommodation of interpreter services at least four weeks in advance." *Id.* at ¶ 18. The document was "'approved' by Marshall University's then Interim Director of Student Affairs and Associate Vice President, Intercultural Affairs, Maurice Cooley." *Id.*

Plaintiff then met with Defendant Cooley to "discuss the failures on the part of the University to provide the necessary and required interpreter services on a consistent, reliable, and timely basis; and, to discuss the four-week notice request included in the 'procedure document' dated September 13, 2019." *Id.* at ¶ 19. Defendant Cooley "refused Plaintiff's request to provide interpreter services outside of classes, arguing that Marshall University has limited resources and that he did not believe the request constituted a reasonable accommodation," and he "berated Plaintiff," telling her she needed to plan visits with her professors at least four weeks in advance. *Id.*

After this meeting, Plaintiff attempted to conform with the procedure created by the Defendants and "prepared a schedule for all the events between September and December 2019, at which Plaintiff believed she would require an interpreter," nevertheless, the school continued to fail to provide her "with necessary and timely access to interpreter or other suitable alternative accommodation for academic activities, including, meetings and conferences with the University's professors, tutoring services, bookstore, and writing center." *Id.* at ¶¶ 20–21. As a result of this failure, Plaintiff was "forced to withdraw" from Marshall University. *Id.* at ¶ 25.

Accordingly, Plaintiff filed suit against Marshall University Board of Directors ("Marshall"), Stephanie Ballou, and Maurice Cooley. Her suit was originally filed in the Circuit Court of Cabell County on October 20, 2020. ECF No. 1-1. The Defendants removed the case to this Court on December 4, 2020. *Notice of Removal*, ECF No. 1. Shortly after removal, the

Defendants moved to dismiss the case, ECF Nos. 4 & 6, and thereafter, Plaintiff timely filed her Amended Complaint on December 24, 2020. *Am. Compl.*, ECF No. 8.

The Amended Complaint asserts six causes of action against Marshall: (1) violation of Section 504 of the Rehabilitation Act of 1973; (2) violation of Title II of the Americans with Disabilities Act; (3) violation of the West Virginia Human Rights Act; (4) civil rights violation pursuant to 42 U.S.C. § 1983; (5) breach of contract; and (6) negligence and negligent hiring, training, retention, and supervision. *Id.* at ¶¶ 28–78. Only one claim is asserted against Defendants Ballou and Cooley, the civil rights violation under § 1983. *Id.* at ¶¶ 60–67.

The Amended Complaint states that "[t]o the extent any claims asserted herein are subject to governmental/sovereign immunity, said claims are being asserted only under and up to the limits of the available insurance coverage." *Id.* at ¶ 27.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The facts contained in the statement need not be probable, but the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court must accept all factual allegations in the complaint as true. *Id.*

## III. ANALYSIS

Marshall raises three main arguments in its Motion to Dismiss. First, it argues that Plaintiff's Rehabilitation Act and ADA claims fail because she cannot meet the second or third

elements of her disability discrimination claims. Second, it argues that it is entitled to immunity for the state law claims. Third, it argues that Plaintiff's § 1983 claim must be dismissed because it is based on her claims under the Rehabilitation Act and the ADA. Defendant's Ballou and Cooley's Motion is to Dismiss reasserts Marshall's third argument. The Court will address these arguments separately.

**A.     Plaintiff Has Stated Plausible Claims Under the ADA and the Rehabilitation Act**

Both the ADA and Section 504 of the Rehabilitation Act prohibit discrimination against qualified individuals with disabilities. *See* 42 U.S.C. § 12132 (ADA) ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."); 29 U.S.C. § 794(a) (Section 504) ("No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .."). The ADA permits plaintiffs to seek money damages against public entities that have engaged in disability discrimination, whereas Section 504 permits plaintiffs to seek money damages from entities that receive federal funds. *See Barnes v. Gorman*, 536 U.S. 181, 184–96 (2002).

Courts "construe the ADA and Rehabilitation Act to impose similar requirements. Thus, despite the different language these statutes employ, they require a plaintiff to demonstrate the same elements to establish liability." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012). A plaintiff asserting a claim of disability discrimination under either Act "must allege that (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits

of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005); *Halpern*, 669 F.3d at 461.

Marshall does not dispute that Plaintiff has a disability, as the Complaint states that Plaintiff is "totally deaf," which constitutes a protected disability under both Acts. Instead, Marshall argues that Plaintiff has failed to sufficiently allege the second and third elements of the discrimination claims. *See Def. Marshall's Mem. in Supp.* 5–6, ECF No. 19.

The second element requires Plaintiff to allege that she is "otherwise qualified," that is that she is one "'who, with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements' for participation in a program or activity." *Halpern*, 669 F.3d at 462 (quoting *Constantine*, 411 F.3d at 498). To establish that she is qualified, Plaintiff must either show that she "could satisfy the essential eligibility requirements of the program" either with or without a "reasonable accommodation." *Id.*

The third element, causation, is the only way in which the two statutes differ. *Id.* at 461. While the ADA only requires a plaintiff to show that her disability was "a motivating cause" of her exclusion, the Rehabilitation Act requires the plaintiff to establish that she "was excluded 'solely' by reason of' [her] disability." *Id.* at 461–62.

Here, Plaintiff's complaint plainly contains enough facts to state a cause of action for disability discrimination under both statutes. As to the second element of disability discrimination, the Amended Complaint sufficiently alleges that Plaintiff is otherwise qualified to participate in the pre-Nursing program at Marshall. It states that Plaintiff is "qualified to be a student at Marshall University and able to perform all of the essential functions of being a student with reasonable accommodations," that she "possesses above-average cognitive, emotional and mental acuity

compared to able bodied adults of her age," and that her "academic records reflect this above-average ability." *Am. Compl.* ¶¶ 3–4. It also states that Plaintiff transferred to Marshall with 30 hours of undergraduate credits from Mountwest Community and Technical College and that she was accepted into the pre-Nursing program at Marshall. *Id.* at ¶¶ 10, 12. She further alleges that she timely requested accommodations from Marshall that were both "reasonable and necessary," but that Marshall failed to provide the requested accommodations or to otherwise engage in an interactive process to identify alternative ones. *See id.* at ¶¶ 12–24. While the determination of whether a requested accommodation is "reasonable" is "often fact-specific," *Halpern*, 669 F.3d at 464, the Court is satisfied that Plaintiff's Amended Complaint sufficiently alleges that the accommodations she requested were reasonable.

Marshall attempts to argue that Plaintiff did not timely request reasonable accommodations, *see Def. Marshall's Mem. in Supp.* 5–6; *Reply* 2, ECF No. 27, but Plaintiff's Amended Complaint clearly articulates that she notified Marshall of her need for accommodations months before she arrived on campus. *Am. Compl.* ¶ 12–13. Moreover, the Amended Complaint goes on to allege that after Marshall first denied her access to out-of-class interpreter services, she was told she needed to provide one week's notice for each request. *Id.* at ¶ 16. Yet when she gave 11 days' notice for needed services, she was told she had provided insufficient notice. *Id.* at ¶ 17. Thereafter, she given a document which stated she needed to provide four weeks' notice for any accommodation request. *Id*. at ¶ 18. Plaintiff alleges that even when she tried to "conform to the egregious four-weeks advance notice policy," Marshall continued to refuse to provide her access to an interpreter or other reasonable accommodations for "academic activities, including, meetings and conferences with the University's professors, tutoring services, bookstore, and writing center." *Id.* at ¶¶ 20–21.

Additionally, Marshall argues that Plaintiff has "failed to establish the specific accommodation that she was required that was not given." *Def. Marshall's Mem. in Supp. 6*. Marshall seems to have overlooked paragraphs 15 through 17 of the Amended Complaint which clearly list the accommodations Plaintiff requested as well as Marshall's failure to provide them. For example, the Amended Complaint states that Marshall failed to provide her an interpreter on her first day of class and that "[a]fter that date, interpreter services were not consistently provided to Plaintiff while she attended classes; rather, interpreter services were provided only intermittently and, on at least one occasion, cancelled." *Am. Compl.* ¶ 14. Additionally, it alleges that Marshall denied requests for interpreter services outside of classes, even to meet with her professors, to utilize the University's services, to meet with her EDGE program mentor, or to attend a required appointment with a Career Education Specialist. *Id.* at ¶¶ 15–17.

Finally, Plaintiff's Amended Complaint also satisfactorily alleges the causation element under both Acts. The Amended Complaint alleges that as a result of Marshall's failure to provide her with the accommodations she requested for her hearing disability or to engage in an interactive process to identify suitable alternatives, Plaintiff was placed "at a substantial disadvantage from other students," and was "forced to withdraw" from the program. *Id..* at ¶¶ 24–25. It takes little inference, perhaps even none at all, to read the facts in the Amended Complaint to assert that Marshall denied Plaintiff reasonable accommodations that she needed because of her hearing disability and that Marshall's denial of those accommodations was both the motivating and sole cause of her forced withdrawal. These allegations are clearly sufficient to support a claim that she was excluded from, or denied access to, Marshall's educational program even under the Rehabilitation Act's more exacting causation standard. Accepting the facts alleged in the Amended

Complaint as true, the Court is satisfied that Plaintiff has stated a plausible claim of discrimination under both the ADA and Section 504 of the Rehabilitation Act.

**B.    Marshall Is Not Entitled to Immunity for the State Law Claims**

The Eleventh Amendment states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Eleventh Amendment immunity extends not only to the states themselves, but also to "state agents and state instrumentalities," such as state agencies. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). This immunity, however, is subject to waiver. "[A] state may voluntarily waive Eleventh Amendment immunity by statutorily waiving sovereign immunity with respect to certain claims brought in its own courts, being sued for such a claim in its own court, and removing that case from state court to federal court." *Anderson v. Barkley*, No. 2:19-CV-00198, 2020 WL 5832021, at *4 (S.D.W. Va. Sept. 30, 2020) (citing *Lapides v. Bd. of Regents*, 535 U.S. 613, 618–24 (2002); *Stewart v. North Carolina*, 393 F.3d 484, 488–90 (4th Cir. 2005)).

Marshall argues it is an agency of the State, and therefore that it is immune from suit under the Eleventh Amendment. *Def. Marshall's Mem. in Supp.* 7. While neither the Plaintiff nor the Court suggest that Marshall is not an arm of the State, *see Zimmeck v. Marshall Univ. Bd. of Governors*, No. CIV.A. 3:13-14743, 2013 WL 5700591, at *5 (S.D.W. Va. Oct. 18, 2013), the Court finds that Marshall is not immune from Plaintiff's state law claims.

West Virginia's legislature enacted a law which waives the State's sovereign immunity for suits where "recovery is sought under and up to the limits of the State's liability insurance coverage." Syl. pt. 4, *W. Va. Lottery v. A-1 Amusement, Inc.*, 807 S.E.2d 760, 761 (W. Va. 2017);

*see* W. Va. Code § 29-12-5(a)(4).[1]

Plaintiff filed her original complaint against Marshall in the Circuit Court of Cabell County. *Compl.*, ECF No. 1-1. The Defendants voluntarily removed the action to this Court. *Notice of Removal*, ECF No. 1. Although Plaintiff's original Complaint did not state that she was only seeking damages up to the limits of the State's liability insurance, she has since amended her complaint to provide such a limitation. *See Am. Compl.* ¶ 27. The Amended Complaint, if litigated in state court, would not allow Marshall to claim sovereign immunity. Accordingly, the state law claims contained therein no longer violate the Eleventh Amendment. *See Anderson*, 2020 WL 5832021, at *4.

C. **Plaintiff's Section Claim 1983 Is Not Precluded by Her Disability Discrimination Claims**

All of the Defendants argue that Plaintiff's § 1983 claim should be dismissed because it "is based on her claims under Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act." *Def. Marshall's Mem. in Supp.* 8–9; *Defs. Ballou & Cooley's Mem. in Supp.* 4, ECF No. 17. Plaintiff argues that her § 1983 claim is a separate, alternative cause of action "based upon Defendants' violations of Plaintiff's equal protection and due process rights; rights which are independently conferred by the Constitution." *Pl.'s Resp.* 17 (citing *Am. Compl.* ¶¶ 11–27, 60–67). Specifically, she claims that the Defendants "have deprived her of equal access to the programs and benefits offered by Marshall University and the pre-Nursing program into which she was accepted and had a property interest." *Pl.'s Resp. in Opp. to Defs. Ballou &*

---

[1] "Any policy of insurance purchased or contracted for by the board shall provide that the insurer shall be barred and estopped from relying upon the constitutional immunity of the State of West Virginia against claims or suits: *Provided*, That nothing herein shall bar a state agency or state instrumentality from relying on the constitutional immunity granted the State of West Virginia against claims or suits arising from or out of any state property, activity or responsibility not covered by a policy or policies of insurance: *Provided, however*, That nothing herein shall bar the insurer of political subdivisions from relying upon any statutory immunity granted such political subdivisions against claims or suits."

*Cooley's Mot.* 9, ECF No. 25. Further, she argues that she "received disparate treatment from that of her peers, including other disabled students, all on the basis of her disability." *Id.* at 10.

While plaintiffs are not permitted to use § 1983 to vindicate the rights provided by the ADA or the Rehabilitation act, *see Williams v. Pa. Hum. Rels. Comm'n*, 870 F.3d 294 (3d Cir. 2017), plaintiffs are permitted to assert alternative theories of relief that are based on the same factual predicate, *see Pathways Psychosocial v. Town of Leonardtown, MD*, 223 F. Supp. 2d 699, 709 (D. Md. 2002) (finding "Plaintiffs' equal protection claims brought under § 1983 are not preempted by the ADA even though based on the same facts and circumstances as the ADA claims"); *Holmes v. Godinez*, 311 F.R.D. 177, 231–32 (N.D. Ill. 2015) (permitting constitutional and ADA claims to continue simultaneously).

Count IV of the Amended Complaint states that the Defendants' "policy requiring four-weeks' notice in order to obtain interpreter services . . . constitutes discriminatory treatment and has denied Plaintiff the opportunity to participate in and benefit from the University's services, programs, and activities, and otherwise discriminated against her, all in violation of Plaintiff's equal protection and due process rights under the Fourteenth Amendment to the Constitution, and rights under the WVHRA." *Am. Compl.* ¶ 63. Nowhere in Count IV of the Amended Complaint does Plaintiff allege that the § 1983 action is based on a violation of the ADA or the Rehabilitation Act. Accordingly, the Court declines to dismiss Plaintiff's § 1983 claim on the basis that it is somehow preempted or precluded by her ADA and Rehabilitation Act claims.

Even so, the Court has concerns about whether this cause of action can continue against Defendant Marshall. Section 1983 provides a cause of action against "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person

within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added). Generally, states and state agencies are not considered "persons" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983); *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1139 n.6 (4th Cir. 1990). Accordingly, the Court requires additional briefing from the parties addressing whether Plaintiff can maintain a § 1983 claim against Marshall as an entity.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants Ballou and Cooley's Motion to Dismiss. ECF No. 16. Additionally, the Court **DENIES, in part,** Defendant Marshall University Board of Governors's Motion to Dismiss. ECF No. 18. The Motion is denied to the extent it seeks to dismiss Plaintiff's Rehabilitation Act, ADA, West Virginia Human Rights Act, breach of contract, and negligence and negligent hiring, training, retention, and supervision claims.

The Court **DIRECTS** Plaintiff and Defendant Marshall University Board of Governors to supply the Court with supplemental briefing on the § 1983 claim. Plaintiff shall submit a brief to the Court **on or before July 12, 2021**. Marshall will then have seven (7) days to file a response.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: July 1, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE